UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| MISTY N. NOVAK, ) | |
| ) | |
| Plaintiff, ) | Case No. 6:11-cv-06317-PK |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

Jon C. Correll, 132 E. Broadway, Suite 212, Eugene, OR 97401. Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; David Morado, Regional Chief Counsel, Region X, and Kathy Reif, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Attorneys for Defendant.

**PAPAK, United States Magistrate Judge.**

Plaintiff Misty Novak seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Both parties have consented to proceed before a Magistrate Judge in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). Because the Commissioner's final decision was based on proper legal standards and is supported by substantial evidence, the decision is affirmed.

## I. BACKGROUND

Ms. Novak applied for SSI and DIB on August 14, 2009, alleging disability as of March 1, 2001, due to "[u]pper spinal lordosis, scoliosis, [and] degenerative disk disease." Tr. 142–153, 225. Ms. Novak was born in 1983, possesses the equivalent of a high school education, and worked as a waitress, cashier, and animal caretaker. Tr. 23, 142, 248–54 . After the Commissioner denied her application initially and upon reconsideration, Brown requested a hearing before an administrative law judge ("ALJ"). Tr. 84–87, 113–14. The ALJ held a hearing on December 3, 2010, taking testimony from Ms. Novak, Mr. Jayson Novak, and a vocational expert. Tr. 48–83. On December 16, 2010, the ALJ issued a decision finding Ms. Novak not disabled. Tr. 15–24.

The ALJ applied the five-step sequential disability determination process set forth in 20 C.F.R. §§ 404.1520 and 416.920. Tr. 15–24. The ALJ found that Ms. Novak's date last insured was December 31, 2010. Tr. 17. At step one, the ALJ found that Ms. Novak had not engaged in substantial gainful activity since her earliest legal onset date, June 19, 2008. *Id.* At step two, the ALJ found that Ms. Novak had the following severe impairments: "mild degenerative disk disease of the thoracic and lumbar spine, obesity . . ., and asthma." Tr. 18. At step three, the ALJ

OPINION AND ORDER, Page 2

found that Ms. Novak's impairments, or a combination of those impairments, did not meet or medically equal a listed impairment. *Id.* The ALJ found that Ms. Novak has the residual functional capacity to perform light work with several additional restrictions. *Id.* Ms. Novak can "balance and kneel no more than frequently" and "can climb, stoop, crouch, and crawl" only occasionally. *Id.* Further, Ms. Novak is restricted from work that would expose her to concentrated pulmonary irritants. *Id.* At step four, the ALJ found that Ms. Novak could not perform her past relevant work. Tr. 22–23. At step five, the ALJ concluded that Ms. Novak could perform jobs that exist in significant numbers in the national economy; accordingly, the ALJ concluded that Ms. Novak was not disabled. Tr. 23–24.

The Appeals Council denied review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. Tr. 1–6. Ms. Novak now seeks judicial review of that decision.

## II.    STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Vasquez v. Astrue*, 547 F.3d 1101, 1104 (9th Cir. 2008) (citation omitted). The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). If evidence supports more than one rational interpretation, the court upholds the Commissioner's decision. *Tommasetti v. Astrue*, 533 F.3d

1035, 1038 (9th Cir. 2008). A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti*, 533 F.3d at 1038 (citation omitted).

### III.   DISCUSSION

Ms. Novak argues that the ALJ erred by: (1) giving greater weight to the opinions of the state agency physicians, Drs. Berner and Westfall, than to the opinion of Ms. Thom, a treating nurse practitioner; (2) improperly rejecting Ms. Novak's subjective symptom testimony; (3) improperly rejecting the lay witness testimony; and (4) formulating an RFC that did not account for all of her limitations. Ms. Novak also seeks to supplement the record with evidence that was submitted to, but not considered by, the Appeals Council.

#### A.   Medical Evidence

Ms. Novak argues that the ALJ erred by giving the opinions of the state agency physicians, Drs. Berner and Westfall, greater weight than the opinion of Ms. Thom, a nurse practitioner. Pl.'s Br. 6–8. An ALJ must determine the weight to give each source of evidence. 20 C.F.R. §§ 404.1527(d), (f), 416.927(d), (f). Opinions from "acceptable medical sources" may generally be accorded more weight than those from "other sources." *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996); 20 C.F.R. §§ 404.1513, 416.913. An ALJ may wholly or partially discount the opinion of any source, but the regulations and Ninth Circuit case law establish specific standards that an ALJ must apply in order to do so. *See* 20 C.F.R. §§ 404.1527, 416.927

(standards for evaluating medical opinions); *Lester v. Chater*, 81 F.3d 821, 830–33 (9th Cir. 1995) (standards for evaluating acceptable medical sources); *Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir. 1993) (standards for evaluating other sources). An ALJ may only reject the opinion of a doctor who has examined a claimant in favor of the differing opinion of a non-examining doctor if the ALJ "gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

Ms. Novak began seeing Ms. Thom, a nurse practitioner, on July 7, 2010; she met with Ms. Thom twice more before Ms. Thom filled out a medical opinion form provided by Ms. Novak's attorney. *See generally* Tr. 541–42, 545–46, 551–52, 583–85. Ms. Thom diagnosed Ms. Novak with chronic low back pain and sciatica, which she concluded would cause Ms. Novak to miss more than three days of work in a typical month. Tr. 585. Further, Ms. Thom reported that Ms. Novak could lift ten pounds occasionally, that she could stand or walk less than two hours in a workday, and that she would need to periodically switch between sitting and standing positions. Tr. 583–84. A signature appears on a line captioned "Supervising M.D.", but the ALJ found the signature illegible.[1] Tr. 21, 585.

On October 19, 2009, Dr. Berner, a reviewing physician, concluded that Ms. Novak could perform a full range of light work with some additional postural limitations. Tr. 506, 511. Dr. Berner concluded, based on his review of the record, that Ms. Novak could lift twenty pounds occasionally and ten pounds frequently. Tr. 505. She could sit or stand and walk for six

---

[1] In the supplemental evidence provided to the Court, Ms. Novak clarifies that Dr. Rajesh Ravuri was the signatory. *See* Pl.'s Br. at App'x 1-1.

OPINION AND ORDER, Page 5

hours in an eight hour work day. *Id.* On January 26, 2010, Dr. Westfall, a second reviewing physician, affirmed Dr. Berner's opinion and RFC. Tr. 512.

The ALJ considered the three opinions and gave "great weight to the opinions of Dr. Berner and Dr. Westfall," but gave "little weight to the opinion of [Ms.] Thom." Tr. 21. Although Ms. Thom had a treating relationship with Ms. Novak, the ALJ concluded that because she was not an acceptable medical source, it was appropriate to defer to the experience and training of the consultative physicians. *Id.* Further, the ALJ noted that Ms. Thom's opinion did not reflect her treatment notes, particularly with regard to the conclusions Ms. Thom drew from an MRI of Ms. Novak's spine. *Id.*

Ms. Novak argues that the ALJ erred by giving greater weight to the testimony of the consultative physicians than to Ms. Thom, who was treating Ms. Novak. Pl.'s Br. at 8. Under the regulations, Ms. Thom, a nurse practitioner, is considered an "other source." *See* 20 C.F.R §§ 404.1513(d)(1); 416.913(d)(1); *see also Gomez*, 74 F.3d at 970 ("Acceptable medical sources specifically include licensed physicians and licensed psychologists, but not nurse practitioners."). Further, there is insufficient evidence in the record to conclude that Ms. Thom was acting as a member of a treatment team that included an acceptable medical source. In *Gomez*, a nurse practitioner's opinion was accorded greater weight because she "worked closely under the supervision of [a physician] and she was acting as an agent of [the physician] in her relationship with" the claimant. *Gomez*, 74 F.3d at 971.[2] Here, the only evidence of a physician's involvement was the signature of a physician on Ms. Thom's report and Ms. Novak's testimony

---

[2] In *Gomez*, the court relied on regulatory language that has since been repealed; however, because there is little evidence that Ms. Thom was part of a treatment team, the Court need not address the question of *Gomez's* "continued vitality." *See Molina v. Astrue*, 674 F.3d 1104, 1111 n.3 (9th Cir. 2012).

OPINION AND ORDER, Page 6

that the physician "read all of my information, but I never did see him [*sic*]." Tr. 61–62, 585. Thus, Ms. Thom is an "other source" whose opinion the ALJ may reject by offering specific, germane reasons for doing so. *See Molina*, 674 F.3d at 1111–12; *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

The ALJ offered several reasons for giving Ms. Thom's opinion little weight, which Ms. Novak does not challenge as erroneous or unsupported by the record. Tr. 21. The ALJ noted that Ms. Novak only saw Ms. Thom twice before her opinion was submitted, and that Ms. Thom had deferred a comprehensive examination. *Id.* Moreover, although Ms. Thom and the state agency physicians reviewed similar records, this Court cannot conclude that it was unreasonable for the ALJ to favor the opinions of physicians over the contradictory opinion of an "other source," even one in a treating relationship with Ms. Novak. *See Molina*, 674 F.3d at 1111–12 (affirming the ALJ's rejection of an "other source" opinion because it was contradicted by the opinion of a physician specialized in a relevant field). Indeed, "[w]hen the evidence before the ALJ is subject to more than one rational interpretation, [a court] must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).

The ALJ also noted that the other source of evidence substantially relied upon by Ms. Thom, other than the MRI report, was Ms. Novak's subjective complaints. *See* Tr. 21. On the medical opinion form submitted by Ms. Thom, she indicated that the source of her opinion was an x-ray performed in August 2009 and a MRI performed in September 2009. Tr. 583. Further, during the three thirty minute patient visits in Ms. Thom's treatment notes, she spent a substantial amount of time counseling Ms. Novak and coordinating her care. *See* Tr. 541, 545,

551–52. Ms. Thom's treatment notes also indicate that she and Ms. Novak reviewed and worked on some part of the opinion form together. Tr. 541 ("Reviewed and completed [the scanned disability evaluation and questionnaire] in my presence."); *see also* Tr. 60. As the ALJ properly found Ms. Novak's subjective symptom testimony not credible, *see infra* pp. 11–15, this is a germane reason for according Ms. Thom's opinion little weight. *See Bray*, 554 F.3d at 1228 ("As the ALJ determined that Bray's description of her limitations was not entirely credible, it is reasonable to discount a physician's prescription that was based on those less than credible statements."). Thus, the ALJ did not err in giving little weight to the opinion of Ms. Thom, an "other source," because he offered several germane reasons supported by substantial evidence for doing so.

Ms. Novak also argues that the ALJ mischaracterized Dr. Berner's opinion. Pl.'s Br. at 7–8. The ALJ stated that he "concurs with the opinions of Dr. Berner and Dr. Westfall that the claimant's MRI shows only mild changes that do not support the degree of severity alleged by the claimant." Tr. 21. Ms. Novak is correct, Dr. Berner never explicitly said that her MRI findings were "mild"; however, the ALJ was paraphrasing Dr. Berner's opinion, he was not quoting from it. Further, the ALJ's statement is supported by Dr. Westfall's opinion affirming Dr. Berner's opinion, which noted that despite Ms. Novak's degenerative disk disease, she exhibits no motor or sensory deficits and she is able to ambulate. Tr. 512. Ms. Novak also challenges Dr. Westfall's use of the term "mild" because it was not used in the MRI report; however, it was not inappropriate for Dr. Westfall, a physician, to draw conclusions from the medical evidence.

Further, even if the ALJ slightly mischaracterized the record, it does not detract from his ultimate adoption of the opinions offered by Dr. Berner and Dr. Westfall. The premise of the challenged sentence is that Ms. Novak alleged limitations that the MRI does not support, tr. 21, which is supported by both doctors' conclusion that Ms. Novak could perform a full range of light work with the addition of some postural limitations. *See* Tr. 505–06, 511–12. Dr. Berner and Dr. Westfall were both aware of Ms. Novak's allegations and their opinions, which explicitly relied on the MRI report, implicitly reject her allegations. Thus, the ALJ's choice of phrasing is not a legal error.

In sum, the ALJ's decision to accord more weight to the opinions of Dr. Berner and Dr. Westfall than to the opinion of Ms. Thom is affirmed.

## B.    Plaintiff's Credibility

Ms. Novak also argues that the ALJ did not provide clear and convincing reasons for finding her not credible; thus, he improperly discounted her subjective symptom testimony. Pl.'s Br. at 8–9. The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez*, 572 F.3d at 591. First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir 1996).

Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill*, 12 F.3d at 918. Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and]

unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Ms. Novak testified that her inability to work is a result of limitations stemming from her chronic back pain and her asthma. *See generally* Tr. 53–66, 204–16. Ms. Novak testified that she is in constant pain, which prevents her from participating in most daily activities. Tr. 65, 216. Ms. Novak reported that her husband must help her perform basic hygiene functions because her back will not bend. Tr. 66. Ms. Novak also testified that her asthma is not completely controlled with medications and that exposure to airborne irritants can precipitate an asthma attack. Tr. 64–65. She suffers an asthma attack four to five times per week, which causes her to become dizzy. Tr. 64.

Ms. Novak argues that the ALJ's credibility finding was "grounded on the assessments made by Drs. Berner and Westfall," which Ms. Novak challenges as erroneously interpreted by the ALJ. The ALJ's treatment of those opinions, however, was not deficient and was based on substantial evidence. *Supra* pp. 4–9. Further, the ALJ's credibility finding is premised on more than the objective medical evidence. Thus, even if the ALJ incorrectly relied on the opinions of Dr. Berner and Dr. Westfall, the error was harmless because the credibility finding is still supported by substantial evidence. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (affirming the ALJ's overall credibility finding despite errors); *Batson*, 359 F.3d at 1197 (same).

The ALJ found that Ms. Novak was less than fully credible, and as such, he gave only partial weight to her testimony. Tr. 22. The ALJ noted Ms. Novak's poor work history and young age. *Id.* He also noted that Ms. Novak's activities of daily living were more strenuous than would be expected for someone with her alleged limitations. *Id.* Finally, the ALJ noted inconsistencies between Ms. Novak's testimony and that of her husband, and he noted that the medical evidence did not support her alleged limitations. *Id.*

An ALJ may utilize ordinary techniques of credibility evaluation, including inconsistencies in statements made by a claimant. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (citations omitted). Here, the ALJ noted discrepancies between Ms. Novak's description of her limitations and her husband's description. *See, e.g.*, Tr. 22, 66, 69. The ALJ also noted that Ms. Novak worked part-time and home-schooled her children through March 2008. *See* Tr. 181, 199. Although this activity ended before Ms. Novak's amended onset date, there is no evidence in the record that her condition deteriorated after that date. *See, e.g.*, Tr. 216 (reports being "in pain all day long[;] I'm never not in pain" in March 2008); Tr. 318 (Ms. Novak was treated at an emergency room for back pain in October 2007). *Compare* Tr. 209–16 (In March 2008, Ms. Novak reported the inability to bend over, to stand for more than thirty minutes, and constant pain.) *with* Tr. 224–25 (In September 2009, Ms. Novak reported the inability to bend over, to stand for long periods of time, and constant pain.). As such, the ALJ appropriately considered Ms. Novak's reported activities as inconsistent with her alleged limitations. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's claimed limitations to be relevant to his or her credibility).

A lack of objective medical evidence, standing alone, may not serve as a clear and convincing reason to discredit the claimant's credibility when the ALJ has already determined that the claimant's impairments could produce some of the symptoms alleged. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("[T]he medical evidence is still a relevant factor in determining the severity of the claimant's [symptoms].") (citation omitted); *Reddick*, 157 F.3d at 722. Here, however, the ALJ articulated other reasons for finding Ms. Novak not credible; therefore, his reliance on the medical evidence further supports the credibility finding. *See, e.g.*, Tr. 512 (Claimant "does have [degenerative disk disease] of lumbar spine, but no motor/sensory deficits, able to ambulate."); Tr. 518–19 ("Her MRI does show some degenerative changes . . . . However, there is no spinal canal stenosis and no significant encroachment. As discussed before, this is enough to give her significant pain, but perhaps not enough to give her disability.").

In sum, the ALJ offered clear and convincing reasons supported by substantial evidence for finding Ms. Novak not credible; the finding is therefore affirmed.

### C.  Lay Witness Testimony

Ms. Novak also argues that the ALJ erroneously rejected the testimony of her husband, Mr. Jayson Novak, without providing a germane reason for doing so. Pl.'s Br. at 5–6. "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis*, 236 F.3d at 511.

In a report submitted to the Social Security Administration on March 28, 2008, Mr. Novak described his wife as substantially dependent on his help for basic daily activities. *See generally* Tr. 195–200. The limitations described are imposed by Ms. Novak's persistent

back pain. Tr. 195. For example, Mr. Novak reported that he dresses his wife from the waist down and helps her in and out of the bath tub. Tr. 196. At the hearing, Mr. Novak testified that he never leaves his wife alone for an entire day because her back may lock up. Tr. 70.

The ALJ gave limited weight to Mr. Novak's testimony because the ALJ found his statements less than fully credible. Tr. 19, 22. The ALJ noted that Mr. Novak's descriptions of his wife's conditions were more severe than the objective medical evidence supported, particularly with regard to her back pain. Tr. 22 ("The claimant's MRI shows only mild degenerative changes that reasonably would not cause the type of problems and limitations" reported.). The ALJ also noted inconsistencies between Mr. Novak's testimony and his wife's report of her symptoms. Tr. 19, 22. Finally, the ALJ commented on Mr. Novak's capacity to make detailed evaluations because of his lack of medical training and his impartiality as an interested party. Tr. 22.

Notably, Ms. Novak does not specifically challenge any of the reasons offered by the ALJ for finding the lay witness testimony not credible. *See generally* Pl.'s Br. at 4–6. Indeed, this Court's review of the record reveals that the ALJ offered several germane reasons, supported by substantial evidence, to discount Mr. Novak's testimony. *See Lewis*, 236 F.3d at 511. As discussed above, the ALJ gave great weight to the opinions of Dr. Berner and Dr. Westfall, reviewing physicians, who opined that Ms. Novak's degenerative disk disease would only limit her to light exertion work. *See supra* pp.4–9; Tr. 511–12. As such, the ALJ properly noted that the objective medical evidence contradicted the limitations described in Mr. Novak's testimony. *See Lewis*, 236 F.3d at 511 ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.") (citing *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir.

OPINION AND ORDER, Page 14

1984)). Further, the ALJ noted contradictory descriptions of Ms. Novak's limitations in her testimony and the testimony of her husband. Tr. 19, 22 ("For example, the claimant specifically indicated that she could not bend over without help and she did not allege having trouble straightening her spine, whereas Mr. Novak stated that she could not straighten her spine without help."). An ALJ may properly draw a negative inference from inconsistent statements. *See Smolen*, 80 F.3d at 1284.

In sum, the ALJ offered several germane reasons supported by substantial evidence for finding Mr. Novak's testimony not credible; the ALJ's finding is therefore affirmed.

### D.     Plaintiff's RFC

Ms. Novak argues that the ALJ's RFC finding and the subsequent VE testimony was erroneous and not based on substantial evidence. Pl.'s Br. at 9. The RFC is defined as the most that a claimant can do despite his or her limitations. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe; the ALJ evaluates "all of the relevant medical and other evidence," as well as a claimant's testimony, in making this assessment. SSR 96-8p, *available at* 1996 WL 374184; 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1); *see also Robbins*, 466 F.3d at 883. Limitations supported by substantial evidence in the record must be incorporated into the RFC. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164–65 (9th Cir. 2001). Because Ms. Novak fails to establish that the ALJ erroneously omitted limitations from her RFC, she has not established that the ALJ erred at step five. Therefore, the ALJ's step five finding is affirmed.

### E.  New Evidence

Ms. Novak also argues that new evidence submitted to the Appeals Council provides further support for her alleged impairments. Pl.'s Br. at 9–10. "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1097–98 (9th Cir. 1999)). A district court, however, has no jurisdiction to review a decision of the Appeals Council denying a claimant's request for review because it is a non-final agency action. *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011) (citing *Klemm v. Astrue*, 543 F.3d 1139, 1144 (9th Cir. 2008)).

On January 7, 2011, Ms. Novak requested that the Appeals Council review the ALJ's decision, arguing that "[t]he ALJ rejected [an] acceptable medical opinion from a treating source." Tr. 11. According to Ms. Novak, during the pendency of the Appeals Council's review, her attorney offered additional evidence of her disability, which is attached to her brief. *See* Pl.'s Br. at 9. The additional evidence was submitted on January 27, 2011, and July 20, 2011. *See id.* at App'x 1-1, 1-4. In a decision dated August 15, 2011, the Appeals Council declined to review the ALJ's decision and expressly noted that it considered a two-page "Representative Brief," which was filed by Ms. Novak's attorney on January 7, 2011. Tr. 5, 291–92. There is, however, no indication that the Appeals Council considered the evidence submitted to this Court. Thus, the new evidence referenced by Ms. Novak was not made a part of the administrative record. *See Brewes*, 682 F.3d at 1163.

On January 27, 2011, Ms. Novak's attorney sent the Appeals Council a second copy of Ms. Thom's opinion, tr. 583–85, which clarified a signature the ALJ found illegible. Pl.'s Br. at App'x 1-1–1-3; Tr. 21. Subsequently, on July 20, 2011, Ms. Novak's attorney submitted two additional medical opinions. *See* Pl.'s Br. at App'x 1-4–1-13. The first opinion is an orthopedic examination conducted by Dr. Aleksandar Curcin on June 27, 2011, and the second opinion is a work capacity evaluation conducted by Mr. John Breuer, a physician therapist, on May 25, 2011. *See id.*

Without further explanation, Ms. Novak posits that the evidence is new and material and that a showing of good cause has been made; thus, the Court should remand for the Commissioner's consideration of the evidence. Pl.'s Br. at 10. Although a court may remand for the consideration of evidence not in the administrative record, a claimant must first show that the new evidence is material and that there was good cause for the claimant's failure to produce it earlier. *See* 42 U.S.C. § 405(g); *Mayes v. Massinari*, 276 F.3d 453, 460 (9th Cir. 2001). To meet the materiality prong, a claimant must establish that the new evidence bears "directly and substantially on the matter in dispute," and there is a "reasonable possibility" it would have changed the ALJ's findings. *Mayes*, 276 F.3d at 462 (citing *Ward v. Schweiker*, 686 F.2d 762, 764 (9th Cir. 1982); *Booz v. Sec. Health and Human Servs.*, 734 F.2d 1378, 1380–81 (9th Cir. 1983)). To meet the good cause prong, a claimant must establish that the new evidence was unavailable at the time of his or her hearing. *See Mayes*, 276 F.3d at 463.

As discussed above, the illegibility of the signature on Ms. Thom's opinion is ancillary to the other reasons the ALJ offered for rejecting the opinion. *See supra* pp. 4–8. Even if the signature was legible, the ALJ offered other legally sufficient reasons for rejecting Ms. Thom's

opinion. *See id.* Thus, the new evidence would not have altered the outcome of the administrative hearing. *See Mayes*, 276 F.3d at 462.

Dr. Curcin offered a medical opinion based on a brief orthopedic examination and a review of an MRI report from 2009. Pl.'s Br. at App'x 1-5–1-6. During the examination, Dr. Curcin noted that Ms. Novak "moved comfortably around the room," walked on her tiptoes, and could "bend forward and touch the mid-thigh level." *Id.* Dr. Curcin noted that the MRI report "indicates multilevel degenerative disease." *Id.* He noted that Ms. Novak was not a candidate for surgery and instead he thought "she would best be served with a [physical therapy] program." *Id.* Dr. Curcin neither offers an opinion as to Ms. Novak's limitations nor does his report suggest any functional limitations. Further, his only formal diagnosis, degenerative disk disease, is duplicative of the conclusions reached by Drs. Berner and Westfall. Tr. 511–12; *see also supra* pp. 4–9. Because the new evidence is "consistent with the medical evidence that was in the record before the ALJ," there is not a reasonable possibility that it would have changed the outcome of the administrative hearing. *See Mondragon v. Astrue*, 364 F. App'x 346, 349 (9th Cir. 2010).

Mr. Breuer performed a thorough work capacity evaluation and opined that Ms. Novak could sustain light level work with a maximum lifting capacity of seventeen pounds. *See* Pl.'s Br. at App'x 1-9. He also recommended that Ms. Novak undergo an "extensive rehabilitation program." *Id.* In a supplemental letter sent by Mr. Breuer, he checked a box indicating that Ms. Novak would miss four or more days of work per month because of "breakthrough pain." *Id.* at App'x 1-13. Mr. Breuer is an "other source," and his opinion is less restrictive than Ms. Thom's opinion, which, as discussed above, the ALJ properly rejected. *Compare id.* at

App'x 1-9, 1-13 (limiting Ms. Novak to lifting less than seventeen pounds, standing for two hours in a day, and sitting for three hours in a day, and concluding that she would miss work more than four days per month due to pain), *with* Tr. 583–85 (limiting Ms. Novak to lifting less than ten pounds and standing less than two hours per day, and concluding that she would miss work more than three days per month due to pain); *see supra* pp. 4–8. Moreover, the ALJ also found Ms. Novak capable of performing light work, although he found Novak could lift twenty pounds rather than seventeen pounds. Tr. 18. Based on the ALJ's rejection of Ms. Thom's more restrictive opinion and the similarities between the ALJ's RFC and Mr. Breuer's opinion, there is not a "reasonable possibility that the new evidence would have changed the outcome of the administrative hearing." *Mayes*, 276 F.3d at 462 (quotations omitted).

Further, even assuming Ms. Novak meets the materiality prong, her unsupported statement that "a showing of good cause has been made" is insufficient to meet her burden under the good cause prong. Nothing in the record or in the newly submitted evidence demonstrates why this evidence could not have been obtained earlier. Moreover, good cause must be based on more than a claimant obtaining a more favorable evaluation after the ALJ has issued a decision. *See Clem v. Sullivan*, 894 F.2d 328, 332 (9th Cir. 1990) (citing *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985)). Thus, Ms. Novak fails to meet the requirements of 42 U.S.C. § 405(g), and this Court will neither consider the proffered evidence nor will it order a remand for the Commissioner to consider it.

## IV. CONCLUSION

For the reasons stated above, the Commissioner's final decision that Ms. Novak is not disabled is based on proper legal standards and is supported by substantial evidence; it is therefore AFFIRMED.

DATED this 29 day of January, 2013.

_____
Paul J. Papak
United States Magistrate Judge